**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| ALEX WALKER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v.   § | NO. 3:08-cv-2188-B |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on December 10, 2008. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History: On April 28, 2005, plaintiff Alex Walker (hereinafter "Plaintiff" or "Walker") protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), claiming disability due to pulmonary embolism and alleging a disability onset date of December 10, 2004. (Administrative Record (hereinafter "Tr." at 10). His claim was denied by the state agency initially and on reconsideration, after which he requested a hearing before an Administrative Law Judge ("ALJ").

The ALJ conducted a hearing on July 10, 2007, at which Plaintiff appeared with counsel and testified on his own behalf. (Tr. 10, 700-716). The ALJ also received the testimony of Vocational Expert ("VE") Shelly Eike, Ph.D. *Id*. On October 10, 2007, the ALJ denied Plaintiff's request for benefits, finding that sections 404.1569 and 416.969 and Rule 201.29,

Table 1, Appendix 2, Subpart P, Regulations No. 4 (hereinafter "the grid rules") directed a finding of "not disabled", based on an exertional capacity for sedentary work, and considering Plaintiff's age, education, and work experience. (Tr. 17). Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on October 6, 2008, the Appeals Council denied his request. (Tr. 3-5). Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002). Plaintiff filed his federal complaint on December 10, 2008. Defendant filed an answer on February 25, 2009. On June 17, 2009, Plaintiff filed his brief, followed by Defendant's brief on August 13, 2009.

Standard of Review - Social Security Claims: When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Villa*, 895 F.2d at 1022 (citations omitted). When the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

Discussion:   To prevail on a claim for disability insurance benefits, a claimant bears the

burden of establishing that he is disabled, defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505, 416.905(a). Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. Under the first four steps, a claimant has the burden of proving that his disability prevents him from performing his past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful activity that the claimant can perform. *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). This burden may be satisfied either by reference to the Medical-Vocational Guidelines ("grid rules") of the regulations, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, or by expert vocational testimony or other similar evidence. *See*, *e.g.*, *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). "A finding that a claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the present case, the ALJ proceeded to step five. He found that Walker did not engage in substantial gainful activity from December 10, 2004 until January 2007, when he obtained employment as a student monitor at a school where he continued to work at the time of the administrative hearing. (Tr. 15, 17). Walker was 35 years old as of the date of the ALJ's decision, had a high school education, and was able to communicate in English. (Tr. 17). The

ALJ found Walker to have a severe combination of impairments, to wit: "morbid obesity and a history of pulmonary embolism" but that the combination of his impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. He found that Walker would be unable to perform his past relevant jobs as an order puller, a stocker, an assembler, or a janitor, but that he had acquired transferrable work skills including reading forms and working with orders. *Id*. Relying on the grid rules, considering Walker's age, education, work experience, and his residual functional capacity ("RFC") for sedentary work, and based on the testimony of the vocational expert that Plaintiff would be capable of applying his transferrable work skills to perform the sedentary job of "sorter" with 55,000 jobs in the national economy and 4,000 jobs in Texas, the ALJ found that the grid rules directed a conclusion of 'not disabled.'" (Tr. 16-17). He therefore concluded that Walker was not under a disability and denied his claim for benefits. (Tr. 17-18). Walker argues that the ALJ improperly evaluated the severity of his impairments, improperly evaluated his credibility, and made improper RFC and step five determinations.

**First**, Walker argues that the ALJ erred in not including his depression and leg, arm, and back pain as severe impairments. Although he first sought treatment for depression in February 2006, in evaluating this impairment the ALJ noted that he was not diagnosed with major depression until May 2006 and that Walker missed follow-up appointments in August and November 2006 as a result of which he was discharged from MHMR services. The ALJ found that the medical evidence failed to demonstrate a severe mental impairment for at least twelve months prior to his return to work in January 2007. (Tr. 14). While Walker directs the court to

4

several areas in the record evidencing medical treatment for depression,[1] at bottom, he provides no evidence beyond that specifically discussed by the ALJ in his finding that Walker's mental impairment had not been severe for at least twelve months. (Tr. 14). Moreover, as the Commissioner notes, Walker's GAF score of 38 was obtained on his first visit to a mental health professional, and was based on his subjective complaints. (Tr. 678-682). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir.2000); *see also Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994). The ALJ properly complied with the procedure set forth in 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii), and his decision regarding Walker's depression is supported by substantial evidence.

Walker also argues that the ALJ erred in not finding his leg, arm, and back pain to be severe impairments. In detailing the medical evidence in his opinion, the ALJ takes note of Walker's allegations of pain in his back, arm, and legs, and also describes the unremarkable medical findings upon examination of Walker. (Tr. 11, sixth paragraph; Tr. 12, first, fifth, and sixth paragraphs; Tr. 13, second, fourth, fifth, and sixth paragraphs). Walker's medical records throughout 2005 indicate normal strength, range of motion, and reflexes in his extremities, with

---

[1] Treatment notes from several emergency room visits described Walker as "anxious": December 8, 2004 (Tr. 196-198), January 10, 2005 (Tr. 189), and January 27, 2005. (Tr. 265). On one occasion, January 27, 2005, the doctor noted Walker "looks somewhat depressed", (Tr. 262), however, this observation does not amount to a clinical finding. On February 21, 2006 Walker was assessed a current year GAF rating of 38. (Tr. 683). From February 21, 2006 through at least September 8, 2006, Walker expressed depressive feelings and difficulties with suicidal ideation, (Tr. 661, 663-664, 678, 680-681). However, these self-reported symptoms are merely entered on checklist-style forms which do not provide any analysis or support for the check-marked conditions. Walker was prescribed anti-depressant medication on May 19, 2006 and September 8, 2006. (Tr. 669, 672, 677).

5

no evidence of deep vein thrombosis[2] and no clubbing, cyanosis, or edema.[3] While several medical records indicate edema and limiting pain, there are also records from the same time periods indicating no edema and negative for thrombosis.[4]

An impairment can be considered "not severe" only if it is a slight abnormality having such minimal effect on an individual that it would not be expected to interfere with the

---

[2] Deep vein thrombosis: "a condition marked by the formation of a thrombus [a clot of blood formed within a blood vessel and remaining attached to its place of origin] within a deep vein (as of the leg or pelvis) that may be asymptomatic or be accompanied by symptoms (as swelling and pain) and that is potentially life threatening if dislodgment of the thrombus results in pulmonary embolism." See http://www.merriam-webster.com/medical/deep%20vein%20 thrombosis and http://www.merriam-webster.com/dictionary/thrombus.

[3] January 10, 2005, January 27, 2005- No clubbing, cyanosis, or edema in extremities. (Tr. 189, 265). January 28, 2005, February 27, 2005- no evidence of deep venous thrombosis of the left lower extremity. (Tr. 271, 357). June 3, 2005, seen in ER for pain, complaining of pain in side and legs, discharge notes state "At this time, we do not find any cause for your pain." (Tr. 560). From September 30, 2005 - October 3, 2005, there was no cyanosis, clubbing, or edema, and normal gait, sensory, and range of motion in upper and lower extremities. (Tr. 508). During that hospital stay, a MRI and "three-view" were performed to address Walker's complaints of left arm tingling, and the results "just showed mild degenerative changes." (Tr. 510).

[4] June 10, 2005- bilateral pitting edema. (Tr. 445). Motor system examination showed strength in the lower extremities to be 5/5, however, examination was limited due to Plaintiff's "severe excruciating burning" pain and sensitivity to touch. He could not flex his hips and showed allodynia* and areas of dysesthesia* in both lower extremities. Deep tendon reflexes were absent in all four extremities and a straight-leg raise test could not be done. (Tr. 448-449). However, the next day, on June 11, 2005, there was no evidence of venous thrombosis in the legs. (Tr. 464). On August 12, 2005, there was no noticeable edema, (Tr. 492), but there was trace lower extremity edema with strong distal pulses on August 13, 2005. (Tr. 486). From August 12-15, 2005, monitoring of the legs of venous thrombosis returned negative results. (Tr. 475).

*allodynia: "Pain from stimuli which are not normally painful. The pain may occur other than in the areas stimulated. Allodynia means other pain." See http://www.medterms.com/script/main/art.asp?articlekey=25197.

*dysesthesia: "an unpleasant abnormal sensation produced by normal stimuli." See http://medical-dictionary.thefreedictionary.com/dysesthesia.

6

individual's ability to work, irrespective of age, education, or work experience. *Stone v. Heckler*, 752 F. 2d 1099 at 1101 (5th Cir. 1985) (internal citations omitted).  See also *Loza v. Apfel*, 219 F.3d 378, 391-92 (5th Cir. 2000) (noting that the Fifth Circuit continues to apply the definition of "not severe" from *Stone*); SSR 85-28 (S.S.A. 1985) (acknowledging and noting agreement with *Stone*'s definition of "not severe").  As the Commissioner points out, Walker's condition as of the hearing date, which occurred six months after Walker resumed employment, was not significantly different from his condition during his alleged period of disability.  As of the July 10, 2007 hearing, Walker was still on Coumadin,[5] weighed between 340-380 pounds, took blood pressure medication, and was on a special diet.  (Tr. 15).  The ALJ considered Walker's depression and his leg, arm, and back pain, and found that they were not severe impairments.  His findings are supported by substantial evidence.

**Second**, Walker contends that the ALJ improperly evaluated his credibility- specifically that the ALJ failed to consider his inability to afford treatment and incorrectly found that his subjective complaints were not supported by the objective medical evidence.  The ALJ noted that Walker "continued to have multiple visits to the emergency room in 2005 from one hospital to another for complaints of chest pain." (Tr. 12, ¶ 3).  Regarding Walker's inability to afford treatment, his medical records detail a robust history of medical care, albeit at a number of different hospitals.[6]  He was referred to community clinics on several occasions; however, as the ALJ found, Walker did not contact the community clinics for follow up, but rather sought

---

[5] Coumadin is an anticoagulant; its generic name is Warfarin Sodium. *See* http://www.coumadin.com.

[6] Walker went to emergency rooms in 2004 in December (Tr. 196, 381), and in 2005 in January (Tr. 188, 259-269, 369-371), February (Tr. 280-302, 343, 349-350), May (Tr. 320, 571-590), June (Tr. 441-465, 556), August (Tr. 475-495), September and October (Tr. 506-546).

treatment only from area hospitals' emergency rooms. (Tr. 15). Such behavior is consistent with his lack of follow-through for mental health care treatment. (Tr. 14). While there is some evidence that Walker ran out of medication and was unable to afford refills,[7] this was considered by the ALJ.[8] The ALJ also considered the objective medical evidence, which indicated that "the findings of various cardiac tests were negative for any abnormalities. Additionally, various CT angiogram [sic] did not show a very convincing evidence of pulmonary embolism." (Tr. 15, ¶ 2). After describing the objective medical evidence and summarizing Walker's testimony, (Tr. 11-15), the ALJ found that Walker's "complaints suggest a greater degree of impairment than is established by the objective medical evidence." (Tr. 15). The ALJ accepted the presence of Walker's complaints and that they may cause some pain, but found that the pain was not incompatible with the performance of sustained sedentary work activity. *Id.* The determination whether a claimant is able to work despite some pain is one which is reserved to the ALJ and upon judicial review should be upheld if supported by substantial evidence. Moreover, pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). In the Fifth Circuit, an ALJ must give reasons for rejecting a claimant's subjective testimony only where the evidence clearly favors the claimant. *Id*. It is readily apparent that the ALJ considered Walker's pain complaints

---

[7] On January 27, 2005, Plaintiff stated he was compliant with his medication and was receiving it for free. (Tr. 264). On May 31, 2005, Plaintiff had run out of medication four days earlier, and a pharmacist assisted him in getting his prescriptions filled. (Tr. 566). On September 30, 2005, Plaintiff was not taking his Coumadin, claiming it was too expensive and that he received his medication through charity. (Tr. 507).

[8] "The claimant reported that he has not been on blood pressure medication. He also reported that he had been off of Coumadin for one month due to its expense." (Tr. 13 ¶ 6). In September 2006, Walker was contacted by Lakes Regional Mental Health Center (MHMR) and he informed them he had been out of his anti-depressant medication for two months, at which point his medications were renewed. (Tr. 14 ¶ 1).

as well as the medical records in concluding that his pain was not so severe as to preclude work at the sedentary level. (Tr. 15-16). Such determination is supported by substantial evidence. *Chambliss v. Massanari*, 260 F.3d 520, 522 (5th Cir. 2001).

**Third**, Walker argues that the ALJ made improper residual functional capacity (RFC) and step five determinations. Specifically, he argues that the ALJ failed to properly take into account his obesity, did not consider that his symptoms "waxed and waned" preventing him from maintaining employment, and that the overall RFC assessment was unclear with respect to his nonexertional limitations, leading to a flawed VE hypothetical and an erroneous step five analysis.

Walker alleges that the ALJ committed legal error by failing to consider his obesity in accordance with SSR 02-1p. Regarding Walker's obesity, the ALJ found "morbid obesity" to be a severe impairment, (Tr. 17), and noted Walker's testimony that his weight varies from 340-380 pounds. (Tr. 15). When obesity is found to be a severe impairment, the effects of any symptoms that could limit functioning, such as pain or fatigue, should be considered, and an assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. SSR 02-1p, paragraphs 6 and 8. The ALJ, in limiting Walker to sedentary work, took into account the effects of Walker's obesity. As the Commissioner points out, Walker's weight on the date of the administrative hearing had changed little from the alleged disability onset date, but that his weight did not preclude his return to work prior to the hearing. (Def. Br. 20; Tr. 707, 711). The ALJ's consideration of Walker's obesity is supported by substantial evidence.

Walker also argues that he has numerous impairments[9] that were not properly considered by the ALJ, and refers to *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003), for the proposition that the ALJ must find that the claimant will be able to maintain employment where his symptoms "wax and wane". (Pl. Br. 14). Although he points to the fact that a discharge summary in February 2005 made reference to the fact that Walker reported the presence of chest pain that "waxes and wanes" (Tr. 283), the same report concluded that the pain was likely musculoskeletal in origin and imposed no restrictions on his physical activities. (Tr. 285-286). As the Commissioner points out, there is no evidence in the record indicating any limitations being placed on Walker, (Def. Br. 20), particularly the height restrictions and avoidance of temperature and noise extremes suggested by Walker. (Pl. Br. 11). Only Walker's morbid obesity and history of pulmonary embolism were found by the ALJ to be severe impairments, (Tr. 17), and his detailing of the medical evidence in the decision makes it clear he considered the other limitations Plaintiff alleges in his brief. The determination that a claimant is unable to work is a legal conclusion reserved exclusively to the Commissioner. *Frank*, 326 F.3d at 620; *see also* 20 C.F.R. § 404.1527(e)(1).

The final issue presented is whether the ALJ improperly applied the grid rules in determining Walker was not disabled at step five, after the ALJ specifically stated that strict application of the grid rules was not possible in this case due to unspecified non-exertional limitations. (*See* Tr. at 16, third paragraph, and at 17,¶ 10). Further, Walker argues that the ALJ's posing of a hypothetical question to the VE indicates that the ALJ considered Walker to

---

[9] "[N]umerous impairments, including morbid obesity, chest pain, pulmonary embolisms, pain in the extremities, back pain, depression, abdominal problems, hypertension, and degenerative disc disease." (Pl. Br. 11).

have nonexertional limitations but that the ALJ failed to include any nonexertional limitations in his hypothetical.

The step five burden of proof that there are a significant number of jobs in both the local and national economy that Plaintiff would be capable of performing may be satisfied either by reference to the "grid rules" or by vocational expert testimony. *See*, *e.g.*, *Fraga*, 810 F.2d at 1304. Inability to perform a full range of sedentary work does not necessarily equate with a finding of "disabled" - whether an individual will be able to adjust to other work requires an adjudicative assessment of factors "such as the type and extent of the individual's limitations or restrictions and the extent of the erosion of the occupational base." *See* 20 C.F.R. § 201.00(h)(3). It also requires an individualized assessment of the impacts the limitations will have on the number of sedentary occupations available, considering age, education, work experience, and transferrable skills. *Id*.

The ALJ's discussion as it relates to his step five determination is less than clear.[10] On the one hand it appears that the ALJ relied on the "grid rules" to conclude that Walker was not disabled. (Tr. 17 ¶ 10). On the other hand the ALJ found that "strict application of [Rule 201.29] is not possible, as the claimant has non-exertional limitations which narrow the range of work her is able of (sic) performing" (Tr. 16, third paragraph) and relying on the testimony of the VE, concluded there were sedentary jobs in the economy which Plaintiff could perform and was thus "not disabled" within the meaning of the Social Security Act. (*Id*. at fourth and fifth paragraphs and Tr. 17 ¶¶ 5 and 9).

---

[10] Following a discussion of Walker's credibility, the ALJ stated "[i]n this case, neither the objective medical evidence nor the testimony of the claimant, in addition to considering non-medical evidence, establishes that the claimant's ability to function is so severely impaired as to preclude work at the sedentary level of exertion. The undersigned finds that the claimant can work at this residual functional capacity on a sustained basis". (Tr. 15-16).

As noted above the proof required under step five of the five-step inquiry may be satisfied by resort either to the "grid rules" or on the testimony of a vocational expert. Assuming <u>arguendo</u> that the ALJ erred in relying on the "grid rules", this error does not warrant reversal of the Commissioner's determination and remand because such error is harmless. *Eg. see Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (holding that remand is warranted only when the substantial rights of a party have been affected); *see also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

In questioning the VE, the ALJ asked if Walker's skills would be transferrable to any "strictly sedentary" jobs at the sedentary level of exertion, to which the VE suggested the occupation of "sorter", with approximately 4,000 jobs in Texas and 55,000 jobs in the national economy. (Tr. 714-15). The ALJ also discussed Walker's present employment as an in-school suspension student monitor, which the VE determined was similar to a Dictionary of Occupational Titles (DOT) classification of "teacher's aide" at the light exertion level. However, the VE added that as Walker described his current position, it was being performed as "more sedentary than light." (Tr. 714).

In this case, the hypothetical posed to the vocational expert by the ALJ incorporated the limitations the ALJ found Walker to have- he requested "sedentary jobs" that were "strictly sedentary"- the VE, who was present for the full administrative hearing, understood this instruction, as she consequently narrowed the sedentary job range to one suggested occupation, that of "sorter". This hypothetical is consistent with the impairments of morbid obesity and history of pulmonary embolism that the ALJ found Walker to have. Moreover, when given the opportunity to correct any deficiencies or suggest any additional limitations in hypotheticals to

12

the VE, Walker's counsel declined.

While arguably there are inconsistencies in the findings of the ALJ, there is sufficient evidence in the record based upon the testimony of the vocational expert which the ALJ found to be reliable to find, prior to his re-entry into the job market as a student monitor, that Walker was capable of performing as a "sorter" in the state and national economies. Walker has failed to show that he would be incapable of performing the job of sorter, and his ability to engage in substantial gainful activity is evidenced by his return to work in 2007 even while still suffering from the same severe impairments he alleged to have been disabling in 2005. "Since [Plaintiff] offered no evidence that []he was incapable of performing the types of work that the ALJ determined were available and that []he was capable of performing, [Plaintiff] failed to meet h[is] burden of proof under the disability test." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995), citing *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The ALJ's decision that Plaintiff was "not disabled" is supported by substantial evidence.

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the District Court enter its order AFFIRMING the decision of the Commissioner and judgment DISMISSING this action with

prejudice. A copy of this recommendation shall be transmitted to counsel for the parties.

Signed this 9th day of November, 2009.

                                                  WM. F. SANDERSON, JR.
                                                UNITED STATES MAGISTRATE JUDGE

### NOTICE

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.